J-S18023-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMIE LYNN SCHWARTZ | : | |
| | : | |
| Appellant | : | No. 1840 EDA 2020 |

Appeal from the Judgment of Sentence Entered October 5, 2017
In the Court of Common Pleas of Wayne County Criminal Division at
No(s): CP-64-CR-0000335-2016

BEFORE: PANELLA, P.J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.: **FILED SEPTEMBER 27, 2021**

Jamie Lynn Schwartz (Appellant) appeals *nunc pro tunc* from the judgment of sentence[1] entered in the Wayne County Court of Common Pleas, following her non-jury conviction of involuntary deviate sexual intercourse (IDSI), indecent assault,[2] and related charges for the sexual abuse of her

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant's notice of appeal incorrectly stated the appeal was taken from the September 15, 2020, order denying her post-sentence motion *nunc pro tunc*. Appellant's Notice of Appeal, 9/28/20. In a criminal case, the appeal lies from the judgment of sentence, made final by the denial of a timely filed post-sentence motion. **Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*). Our Prothonotary has corrected the caption accordingly.

[2] 18 Pa.C.S. §§ 3123(a)(7), 3126(a)(7), (8).

husband's two minor nephews.[3]  On appeal, she argues the trial court improperly permitted her and her husband (and co-defendant) to be represented by the same counsel absent a sufficient waiver, and improperly allowed the Commonwealth to introduce Tender Years[4] hearsay evidence absent sufficient notice.  Appellant also contends the jury's verdict was against the weight of the evidence, and trial counsel provided ineffective assistance. For the reasons below, we affirm.

The facts, as developed during Appellant's joint non-jury trial with her husband, are as follows. During the summer of 2013, Michael's nephews, A.S. and N.S., would stay at Michael and Appellant's trailer over the weekends, while their mother, Jessica Bisceglie (Michael's sister) worked.  N.T. Trial Vol. I, 6/21/17, at 71, 73, 104; N.T. Trial Vol. II, 7/17/17, at 3-5.  At the time, A.S. was 12 years old and N.S. was 9 years old.  N.T., Trial Vol. I, at 70, 103. Both victims testified that, during the visits, Appellant and Michael would walk around the house naked "most of the time," and force A.S. and N.S. to take off their clothes too.  *Id.* at 74, 106-07.  Michael would often have an erection. *Id.* at 79, 112.

---

[3] As will be discussed *infra*, Appellant's husband, Michael Schwartz (Michael), was also charged in connection with these crimes, and tried jointly with Appellant.

[4] *See* 42 Pa.C.S. § 5985.1 (permitting admission of otherwise hearsay, out of court statements by child victim or witness under certain circumstances).

The victims described a game they were forced to play called "spin the rock." N.T., Trial Vol. I, at 74-75, 106. The rock they used had an arrow on it, and whoever the arrow pointed towards would have to do "something" like "get naked." *Id.* Appellant and Michael also forced A.S. and N.S. to watch pornographic videos, during which time Appellant was "jerking off" Michael. *Id.* at 80-81, 111-12. Both victims also saw Appellant "giving Michael a blowjob," and having sexual intercourse. *Id.* at 76, 86, 108, 110.

Appellant also sexually abused the victims at Michael's direction. *See* N.T., Jury Trial Vol. I, at 87, 117-18. Appellant gave A.S. a "blowjob" twice, and gave N.S. a "hand job" once or twice, while Michael held the victims down by their shoulders. *Id.* at 76-78, 109-110. A.S. testified that Appellant tried to have sex with him, but he "didn't have a hard-on." *Id.* at 78-79. N.S. also testified that he was at Appellant and Michael's trailer on Easter with I.L., Appellant's minor niece.[5] *See* N.T., Trial Vol. I, at 114, 116; N.T., Trial Vol. II, at 83-84. N.S. stated that in order for him and I.L. to get their Easter baskets, I.L. "would have to play with Michael's penis and [N.S.] would have to play with [Appellant's] boobs."[6] N.T., Trial Vol. I, at 114. Both victims testified that Michael talked to them about a "circle of trust," explaining "[w]hat happens in the house, stays in the house." *Id.* at 81, 106.

---

[5] I.L. was 17 years old when she testified at trial in July 2017. *See* N.T., Vol. II, at 83.

[6] The testimony does not specify what year this incident occurred.

In May of 2014, N.S. revealed to his mother, Bisceglie, that "bad things happen" when he and A.S. stayed at Appellant and Michael's trailer, and "that they have a circle of trust there." N.T., Trial Vol. II, at 6. Although he did not provide details, he told Bisceglie that "they had to walk around the house naked." *Id.* at 7. Bisceglie did not call the police; instead, she called her mother (also Michael's mother), and told Michael "he'll never see [the boys] again[.]" *Id.* at 8-10. However, sometime after January of 2015, she allowed the boys to visit the trailer again, but only when A.S. had a cellphone with him. *See id.* at 12-14.

In the summer of 2016, N.S. told his father, John Fitzgerald, about the "circle of trust" and the "sexual stuff" he and A.S. did at Appellant's trailer. N.T., Trial Vol. I, at 130. Fitzgerald subsequently provided a written statement to the Wayne County District Attorney's Office. *Id.* at 132. Pennsylvania State Trooper Wayne Thomas interviewed N.S. on June 3, 2016, and N.S. relayed to him the sexual acts he was forced to witness or participate in "two and half years prior to the date of [the] interview." *See id.* at 137-42. N.S. told Trooper Thomas that he told his mother about the abuse and "his mom was supposed to be contacting the police, but nobody would believe her." *Id.* at 143.

In August of 2016, Bisceglie was at a Walmart store with A.S., when Michael approached her. N.T., Trial Vol. II, at 14. He showed her a picture of Bisceglie's fiancé and her father "trading guns." *Id.* at 15. Bisceglie's fiancé was a convicted felon, who was not permitted to possess a firearm. *Id.* At

- 4 -

that time, Michael told her "he wasn't going to use those pictures[,] he just needed them to protect himself and that [her] boys need to fix what they have done and [he and Appellant] wanted them to [say] they made all this up and that the lied." *Id.* Bisceglie told Michael that "it's out of [her] hands now." *Id.*

In October of 2016, Appellant and Michael were charged with one count each of IDSI and statutory sexual assault, three counts of indecent assault, and two counts each of indecent exposure and corruption of minors.[7] The Commonwealth filed a notice of joinder on October 12, 2016, indicating its intent to try Michael and Appellant together.[8] *See* Commonwealth's Notice of Joinder, 10/12/16.

On November 15, 2016, Appellant filed an omnibus pretrial motion, requesting, *inter alia*, a change of venue. The trial court conducted a hearing on December 30th. During the hearing, the prosecutor noted that trial counsel — Nefertiti Jordan, Esquire — represented both Appellant and Michael, who, the prosecutor felt had "varying degree[s] of culpability." N.T. Omnibus H'rg, 12/30/16, at 35. Attorney Jordan assured the court that the co-defendants executed a written conflict waiver, although she did not have it with her in court. *Id.* at 36. Accordingly, the trial court proceeded to question Attorney Jordan about the joint representation, and then colloquied Appellant and

---

[7] 18 Pa.C.S. §§ 3122.1(b), 3127(a)(7), 6301(a)(1).

[8] Michael's case was docketed at CP-64-CR-0000336-2016.

Michael separately, under oath. *See id.* at 37-49. At the conclusion of the hearing, the court determined that while a potential conflict did exist, both Appellant and Michael chose to proceed with joint representation. *See id.* at 50; Order, 1/3/17. On January 27, 2017, Attorney Jordan forwarded the parties' written conflict waiver to the trial court. *See* Letter from Attorney Jordan to President Judge Raymond L. Hammill, 1/9/17. That waiver, signed by the parties on June 28, 2016, pertained to dependency reunification proceedings, which resulted from the criminal investigation. *See id.*, Conflict Waiver, 6/26/16. Attorney Jordan also provided an email she sent to Appellant and Michael on August 2, 2016, which referred to a retainer agreement, presumably for her representation in the criminal proceedings, as well as the following statement: "[P]lease note the waiver of conflict of issue still pertains to this matter as the alleged incident is the primary reason for your potential conflict." *Id.*, Email from Attorney Jordan to Appellant and Michael, 8/2/16.

The cases were scheduled for a non-jury trial commencing on June 21, 2017, before President Judge Raymond L. Hammill. One week before trial, on June 13th, the Commonwealth filed a "Tender Years Notice" pursuant to 42 Pa.C.S. § 5985.1, indicating it intended to elicit five prior, out of court statements made by N.S. to various individuals involved in the investigation — specifically, Wayne County Children and Youth Caseworker Maryanne Blackledge, Trooper Thomas, N.S.'s parents (Bisceglie and Fitzgerald), and N.S.'s uncle, Joseph Fitzgerald. *See* Commonwealth's Tender Years Notice,

6/13/17, at 1-2. The Commonwealth attached these prior statements to its notice. *See id.* On June 20, 2017, Appellant filed a motion to exclude the Tender Years testimony asserting the Commonwealth provided insufficient notice pursuant to Section 5985.1(b), and, in any event, the statements were made under unreliable circumstances. *See* Appellant's Motion to Exclude Tender Years Testimony, 6/20/17, at 1-2 (unpaginated).

On the following day, June 21, 2017, prior to the start of trial, President Judge Hammill considered Appellant's motion to exclude the Tender Years testimony. The court first heard argument concerning the timeliness of the motion, and, after taking a short recess, denied Appellant's objection on that ground. *See* N.T., Trial Vol. I, at 7-30. The Commonwealth then presented witnesses to support its claim that N.S.'s statements were made under reliable circumstances. *See id.* at 39-61. Following additional argument by counsel, the court determined that N.S.'s prior out of court statements were admissible.[9] *Id.* at 67. The court proceeded immediately to the non-jury trial.[10]

Both victims testified regarding the abuse they suffered while staying with Appellant and Michael in their trailer. Under cross-examination, A.S. testified he did not know if Appellant was pregnant during this time, although

---

[9] The trial court did not require further testimony from these witnesses during the Commonwealth's case-in-chief, presumably because it was sitting as fact finder.

[10] At the conclusion of testimony on June 21st, the trial court continued the case until July 17, 2017. *See* N.T., Trial Vol. I, at 168-69.

he described her stomach as "[n]ot big." N.T., Trial Vol. I, at 99. Similarly, N.S. could not remember "anything strange" about Appellant's naked body. *Id.* at 120, 127. Both boys also denied noticing anything unusual about Michael's penis. *See id.* at 100, 127.

Appellant and Michael both testified on their own behalf. They denied all allegations of abuse and overt sexual behavior in front of the victims, and denied that the victims stayed with them on the weekends between May 2013 and May 2014. *See* N.T., Trial Vol. II, at 135-36, 138, 145, 151, 154-55. Michael also explicitly denied Bisceglie's claim that he attempted to blackmail her. *See id.* at 141-42. In addition, Appellant and Michael presented evidence that they each had noticeable physical abnormalities at the time the abuse allegedly occurred — primarily during the summer of 2013.

Appellant testified she met Michael in April of 2013, when she was already pregnant with another man's child. *See* N.T., Trial Vol. II, at 156. They married on May 26, 2013, and she gave birth by cesarean section on June 7, 2013. *Id.* at 156, 160, 183. Appellant stated she had her gall bladder removed in August of 2013, was treated for a hernia within her incision in September of 2013, and discovered she was pregnant with Michael's child in November of 2013. *See id.* at 158-60. That child was born on May 15, 2014. *Id.* at 156. Appellant described her stomach as looking "like [she] got attacked by a cat," as a result of her two cesarean sections. *Id.* at 162. Appellant also presented her gynecological medical records, which documented the difficulties she encountered during her pregnancies. *See id.*

at 41-71 (testimony of Nurse JoAnn Anderson, custodian of records at Women's Health Care).[11]

For his part, Michael testified that his penis, which was uncircumcised, was "swelled, painful, and bleeding" for about three months prior to January of 2014. N.T., Trial Vol. II, at 132. He stated he had a circumcision on January 13, 2014, but had to undergo a second surgery in February of 2014 because "[t]here was a problem with the first operation." *Id.* at 131-33.

Appellant and Michael also presented testimony from friends and family members who disputed the victims' accounts that they stayed with Appellant and Michael during the summer of 2013. *See* N.T., Trial Vol. II, at 81 (family friend Ralph Huebner testified A.S. attended church with his grandmother, Barbara Schwartz, "four out of every five weeks" between May 2013 to May 2014); 93-95 (Appellant's stepfather, Charles Misszler, testified that between May 2013 and May 2014, he would pick up Appellant's two older children and never saw the victims at the trailer); 99-100, 104 (Michael's sister, Bailey Ann Schwartz, testified she spent "one to two weekends a month" at the trailer from May 2013 to May 2014 and the victims were never there, and A.S. "spent the summer of 2013 mainly" with his grandmother); 115, 118-19 (Michael's

---

[11] We note that Appellant's medical records indicated she weighed only 126 pounds on May 28, 2013 – less than two weeks before she gave birth to her first child — and 124 pounds on April 18, 2014 — a month before giving birth to her second child. *See* N.T., Trial Vol. II, at 67-68. Although she acknowledged she was losing weight before the delivery of her child in June of 2013, Appellant claimed she still had a "huge stomach." *Id.* at 157.

mother, Barbara Schwartz, testified that the victims never went to Appellant and Michael's trailer without her and never stayed there overnight between May 2013 and May 2014); 129 (Michael's father, Thomas Schwartz, testified the victims did not spend time alone with Michael and Appellant in the trailer between May 2013 and May 2014, and "[t]he times that they were there we were there also"). In addition, I.L. testified that she never did "anything at all sexual" with N.S. or Michael, and she was not at Appellant and Michael's trailer on Easter of 2014. *See id.* at 88, 90.

At the conclusion of testimony and argument on July 17, 2017, President Judge Hammill found both Appellant and Michael guilty of all charges. The next day, the court ordered Appellant to undergo an assessment by the Sexual Offenders Assessment Board (SOAB) to determine if she met the criteria for classification as a sexually violent predator (SVP). *See* 42 Pa.C.S. § 9799.24. On October 5, 2017, the court conducted a combined SOAB and sentencing hearing. The trial court determined Appellant met the criteria for classification as an SVP, and sentenced her to an aggregate term of 12 to 40 years' imprisonment.[12] See N.T., Sentencing, 10/5/17, at 21, 29. That same day, Attorney Jordan filed a motion to withdraw as counsel. The court granted the motion and appointed the Wayne County Public Defenders Association to represent Appellant on appeal. Order, 10/10/17.

---

[12] The court imposed consecutive sentences on all counts with the exception of statutory sexual assault and two of the three counts of indecent assault.

On October 25, 2017, Chief Public Defender Steven Burlein, Esquire, filed a timely notice of appeal. The next day, the trial court directed Appellant to file a Pa.R.A.P. 1925(b) concise statement of error complained of on appeal. *See* Order, 10/26/17. After requesting and receiving two extensions of time, on December 19, 2017, Attorney Burlein filed a statement of intent to file an *Anders*[13] brief pursuant to Rule 1925(c)(4). *See* Pa.R.A.P. 1925(c)(4). Subsequently, on September 20, 2018, this Court dismissed Appellant's appeal when Attorney Burlein failed to file a brief. *See Commonwealth v. Schwartz*, 3494 EDA 2017, Order, 9/20/18.[14] Nearly seven months later, on July 8, 2019, Attorney Burlien withdrew his appearance.

On July 17, 2019, Appellant filed a timely, *pro se* petition for collateral relief pursuant to the Post Conviction Relief Act (PCRA).[15] By that time, President Judge Hammill had retired, and the Honorable Jonathan Mark, specially presiding, was assigned to oversee the proceedings. *See* Trial Ct. Op., 9/15/20, at 5-6. Present counsel, Mark Moulton, Esquire, was appointed to represent Appellant. Attorney Moulton filed an amended petition on December 20, 2019, asserting, *inter alia*, that prior counsel was ineffective for

---

[13] *See Anders v. California*, 386 U.S. 738 (1967).

[14] We note the appeal was originally dismissed on July 18, 2018. However, upon application of counsel, we reinstated it on August 14th. Thereafter, counsel once again, inexplicably, failed to file a brief and the appeal was dismissed on September 20th. *See Schwartz*, 3494 EDA 2017.

[15] 42 Pa.C.S. §§ 9541-9546.

failing to file post-trial motions, and perfecting her direct appeal. *See* Appellant's Amended Petition for Post-Conviction Relief, 12/20/19, at 3-4 (unpaginated). By order entered February 24, 2020, upon agreement of the Commonwealth, Judge Mark granted reinstatement of both Appellant's post-sentence motion and direct appeal rights *nunc pro tunc*. *See* Order, 2/24/20, at 2-3. The court directed Appellant to file a post-sentence motion within 14 days. *Id.* at 3.

On March 10, 2020, Appellant filed a post-sentence motion challenging, *inter alia*, the weight of the evidence supporting her convictions and the excessiveness of her sentence.[16] On July 7, 2020, the post-sentence motion was denied by operation of law. *See* Pa.R.Crim. P. 720(B)(3)(a) ("If the judge fails to decide the motion within 120 days, or to grant an extension . . ., the motion shall be deemed denied by operation of law."). However, on July 15th, Judge Mark entered an order striking the July 7th order. *See* Order, 7/15/20. Judge Mark deemed the 120-day period for deciding the post-sentence motion "tolled by the COVID-19 pandemic-related Emergency and Court Closure

---

[16] The 14th day after the court's February 24th order was March 9, 2020. However, the docket indicates the February 24th order was not mailed to the parties until **February 27, 2020**. *See* Trial Court Docket, 2/24/20; Pa.R.A.P. 108(d)(1) (date of entry of criminal orders is date clerk of courts mails or delivers copies of order to parties). Thus, Appellant had until March 12th to file a timely post-sentence motion, and her motion filed on March 10th, was timely.

Orders[.]"[17] **Id.** Thereafter, on September 15, 2020, Judge Mark entered an opinion and order denying Appellant's post-sentence motion. This timely *nunc pro tunc* appeal follows.[18]

Appellant raises the following four issues for our review:

I.   Whether the . . . trial court erred as a matter of law and/or abused it[ ]s discretion in that [Appellant] was permitted [to] proceed under joint representation and waiver of jury without sufficient colloquy of either and [the court's] reliance on a defective waiver?

II.   Whether the . . . trial court erred as a matter of law and/or abused it[ ]s discretion in allowing tender years hearsay without the defense having sufficient meaningful notice of the Commonwealth's intent to use that evidence?

III.   Whether the . . . trial court erred as a matter of law and/or abused it[ ]s discretion in the weights applied to testimony concerning [Appellant's] distinctive physical appearance

_____

[17] We recognize that an order denying post-sentence motions by operation of law is not subject to reconsideration. **See** Pa.R.Crim.P. 720(B)(3)(c). Nevertheless, we agree with Judge Mark's determination that a significant period of time during the relevant 120-day period was tolled due to the Pennsylvania Supreme Court's COVID-19 judicial emergency. **See In re Gen. Statewide Jud. Emergency**, 228 A.3d 1283, 1285 (Pa. 2020) (suspending all time computations from March 19, 2020, through April 1, 2020); In re Gen. Statewide Jud. Emergency, 230 A.3d 1015 (Pa. 2020) (extending judicial emergency through June 1, 2020). Thus, we conclude Judge Mark had the authority to strike the July 7th order and consider Appellant's post-sentence motion.

[18] Appellant complied with the trial court's direction to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. We note Appellant raised several additional claims in her Rule 1925(b) statement that she does not include in her brief. **See** Appellant's Concise Statement of Matters Complained of on Appeal, 10/29/20, at 1-2 unpaginated (asserting the trial court erred or abused its discretion in: "disallowing relevant evidence of the physical appearance of" Appellant, denying a change of venue, and imposing a lengthy sentence).

during the time of the charged events, the witnesses' lack of noting the patchwork of scars that existed, and [the] testimony of [I.L.] which directly contradicted the Commonwealth's evidence?

IV. Whether the . . . court based upon matters uniquely of record in the instant case [Appellant] suffered ineffective assistance of counsel by trial counsel's ineffective explanation of joint representation and jury waiver; lack of pre-trial motions to suppress evidence, suppress prior bad acts evidence, inadequate support for the change of venue and recusal motions; failing to impeach witnesses or present credible evidence that refuted witness testimony in violation of [Pa.R.E.] 603 & 613 with no reasonable basis to omit such impeachment; failing to present evidence of viable defense(s) including improper use of medical witness testimony, omission of relevant medical testimony and lack of use of available medical testimony?

Appellant's Brief at 5-6 (some capitalization omitted).[19]

First, Appellant contends the trial court improperly permitted Attorney Jordan to represent both her and Michael absent a sufficient waiver of conflict.[20] Appellant's Brief at 24. Appellant insists that the "mere existence of [a] conflict" between co-defendants represented by the same counsel "vitiates the proceedings, even though no actual harm results." *Id.* at 25. Here, she maintains there was an actual conflict since she "could have chosen to be a witness against" Michael, and could have argued "she was coerced into

---

[19] We have renumbered Appellant's issues for ease of disposition.

[20] Although Appellant also challenged the sufficiency of her jury waiver colloquy in her statement of questions, she does not address that particular claim in the argument section of her brief. *See* Appellant's Brief at 24-29. Accordingly, it is waived for our review. *See* Pa.R.A.P. 2119(a) (argument section of brief must contain discussion of claim and citation of pertinent authorities).

criminal activity" by him. ***Id.*** at 25-26. Although she acknowledges a conflict may be waived, Appellant argues the written waiver used by Attorney Jordan applied to family court proceedings, where Attorney Jordan represented Appellant and Michael "in tandem regarding reunification of their children." ***See id.*** at 26 (citation omitted). However, the waiver did not provide "sufficient notice" of the different burdens of proof and consequences she faced in a criminal proceeding. ***See id.*** at 26-27. Thus, Appellant insists her conflict waiver did not constitute "a knowing and intelligent choice," and once the trial court received the written waiver, it should have recognized Appellant "may have been misinformed by counsel[.]" ***Id.*** at 27-28.

It is well-established that a defendant may "knowingly and intelligently waive a constitutional right" — including the right to be represented by individual counsel. ***See Commonwealth v. Szekeresh***, 515 A.2d 605, 607 (Pa. Super. 1986). "Moreover, the Commonwealth merely needs to establish a knowing and intelligent waiver of a constitutional right by a preponderance of the evidence." ***Id.*** Joint representation, alone, "is insufficient to support a finding of a conflict of interest, and is not a per se" constitutional violation of the right to effective counsel. ***Commonwealth v. Evans***, 451 A.2d 1373, 1375 (Pa. Super. 1982). Nevertheless, an appellant challenging joint representation need not show that actual harm resulted; rather, they must "at least show the possibility of harm." ***Id.*** The Pennsylvania Supreme Court has explained:

> [An] appellant will satisfy the requirement of demonstrating possible harm, if [they] can show, *inter alia*, that [they] had a defense inconsistent with that advanced by the other client, or that counsel neglected [their] case in order to give the other client a more spirited defense.

***Commonwealth v. Breaker***, 318 A.2d 354, 356 (Pa. 1974) (citation omitted).

Were we to evaluate Appellant's conflict waiver **solely** on the basis of Attorney Jordan's written waiver form, we might agree her waiver was insufficient since it applied to the reunification matter. Although the written waiver does note possible conflicting theories of the events (*i.e.*, that either one of the co-defendants may have forced the other to sexually abuse the victims), it does so in the context of reunification with their children. ***See*** Conflict Waiver, 6/28/16.

Nevertheless, what Appellant fails to acknowledge is that President Judge Hammill conducted a thorough in-court colloquy with both her and Michael before permitting the joint representation. ***See*** N.T., Omnibus H'rg, at 40-49. Appellant affirmatively responded that she understood the following: (1) she and Michael could have conflicting defenses, and the Commonwealth had indicated "she may be less culpable" than he; (2) counsel will be required to argue the same "theory of innocence" for both her and Michael; (3) counsel would not be able to advise her to accept a plea bargain or immunity if representing both her and Michael; and (4) if she could not afford separate counsel, the court would appoint counsel for her. ***See id.*** at 38, 40, 42-43. When asked why she wanted to proceed with the same

attorney, Appellant responded, "Because we didn't do it." *Id.* at 44. Moreover, when the court explained that she "might be caught up in this because of what [her] husband did[,]" Appellant responded, "I understand that[.]" *Id.* Following this colloquy, Attorney Jordan also explained to Appellant that she could request a separate attorney at any time before trial. *See id.*

Based on the comprehensive colloquy conducted by the trial court, we conclude Appellant is entitled to no relief. Although President Judge Hammill acknowledged a potential conflict of interest between the co-defendants existed, he determined it was "their choice to continue with joint representation." N.T., Omnibus H'rg, at 50; *see also* Order, 1/3/17. Appellant's responses during the colloquy support the court's ruling.

Next, Appellant contends the trial court erred or abused its discretion when it permitted the Commonwealth to introduce N.S.'s hearsay statements pursuant to the Tender Years Rule, absent compliance with the statutory notice requirements.[21] Appellant's Brief at 18. She insists the Commonwealth's Tender Years notice, sent five days before trial, was insufficient under the Rule, and the fact that she was provided with the actual

_____

[21] In her motion to exclude this testimony, Appellant argued that the Commonwealth provided insufficient notice of its intent to present Tender Years testimony, and that the hearsay statements were unreliable. *See* Appellant's Motion to Exclude Tender Years Testimony, 6/20/17, at 1-2 (unpaginated). On appeal, however, she challenges **only** the Commonwealth's alleged failure to comply with the notice requirement.

- 17 -

statements months earlier in discovery is irrelevant. *See id.* at 18-19. Relying on ***Commonwealth v. Crossley***, 711 A.2d 1025 (Pa. Super. 1998), Appellant argues the Commonwealth was required to notify her, explicitly, that it intended to use the statements as Tender Years evidence. *See id.* at 20-21.

We review a trial court's evidentiary rulings for an abuse of discretion. ***Commonwealth v. Luster***, 234 A.3d 836, 838 (Pa. Super. 2020). However, "[i]ssues of statutory interpretation are questions of law" of which we employ *de novo* review. ***Id.***

The Tender Years Rule, 42 Pa.C.S. § 5985.1, "was enacted to permit admission of hearsay statements made by child victims of sexual abuse, and at the same time provide safeguards for truthfulness and the constitutional rights of an accused." ***Crossley***, 711 A.2d at 1026. The Rule "recognizes that child witnesses pose difficult problems for the parties, the court and the jury." ***Id.*** at 1028. Therefore, it "makes a special accommodation [by admitting prior hearsay statements of a child witness] to enable the prosecution to prove its case[.]" ***Id.*** In turn, however, the Rule requires the prosecution to provide the defense with "a type of notice that is direct and specific in order to provide a meaningful opportunity to challenge the hearsay." ***Id.***

At the time of Appellant's trial, the Tender Years Rule provided, in relevant part:[22]

> (a) **General rule.**—An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing [sexual offenses], not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:
>
> (1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and
>
> (2) the child either:
>
> (i) testifies at the proceeding; or
>
> (ii) is unavailable as a witness.
>
> *     *     *
>
> (b) **Notice required.**—A statement otherwise admissible under subsection (a) shall not be received into evidence unless the proponent of the statement notifies the adverse party of the proponent's intention to offer the statement and the particulars of the statement sufficiently in advance of the proceeding at which the proponent intends to offer the statement into evidence to provide the adverse party with **a fair opportunity to prepare to meet the statement**.

42 Pa.C.S. § 5985.1 (2004) (emphasis added).

This Court first considered the parameters of the Tender Years Rule notice requirement in ***Crossley***. In that case, the appellant was accused of sexually assaulting a three and one-half year old boy he was babysitting.

---

[22] The statute has been amended twice since Appellant's trial, but the substance of the Rule remains the same. Effective August 30, 2021, the Rule now permits out-of-court statements by child witnesses who are under the age of 16. ***See*** 2021, June 30, P.L. ___, No. 29, § 1, effective in 60 days [Aug. 30, 2021].

- 19 -

*Crossley*, 711 A.2d at 1025. On the day of trial, the Commonwealth sought to present the victim's out-of-court statements to his mother and grandmother, as well as a videotaped interview of the victim by a Children and Youth Services (CYS) worker. *Id.* at 1026. The appellant objected, asserting he first received the mother's and grandmother's statement four days before trial, and the videotaped interview the night before trial. *Id.* The Commonwealth did not dispute the appellant's claims, but argued the victim's mother had testified at the preliminary hearing. *See id.* at 1027. The trial court found that the Commonwealth's notice with regard to the mother's and grandmother's testimony was sufficient under Section 5985.1, but that its notice of the videotaped interview was insufficient. *Id.* Thus, the victim's mother and grandmother testified to the victim's prior statements at the bench trial, and the trial court found the appellant guilty of all charges. *Id.*

On appeal, the *Crossley* Court held the Commonwealth's notice of its intent to present this Tender Years testimony was insufficient under the Rule. *See Crossley*, 711 A.2d at 1028-29. Thus, it vacated the judgment of sentence and remanded for a new trial. *Id.* at 1029. The Court explained that Section 5985.1(b) requires more than simply providing the adverse party with the proposed hearsay statements during ordinary discovery; rather, it mandates "notice of an **intention** to offer the hearsay statement at trial[,]" that is, "an intention to use a specific document in a particular manner." *Crossley*, 711 A.2d at 1028. As the panel explained, "the notice provisions are strict and must be strictly observed." *Id.* Furthermore, the *Crossley*

- 20 -

Court determined that "a prejudice analysis, which would require the defendant to establish what he would have done differently had he been given notice, [was] inappropriate." *Id.* at 1028 n.2.

Appellant insists "[t]he facts in *Crossley* are directly on point with the instant case where the Commonwealth provided 'a lot of stuff' but not until 5 days before trial did it identify what specific parts of the 'stuff' the defense needed to be prepared to answer." Appellant's Brief at 21. Although she acknowledges the Tender Years Rule does not require the notice to be in writing,[23] she argues it must be "sufficient enough to permit the defense to asses[s] and effectively defend or accept it." *Id.* at 23.

Here, Judge Mark addressed Appellant's claim as follows:

> In this case, [Appellant] alleges that she did not receive notice of the Commonwealth's intent to introduce Tender Years testimony until the eve of trial and that, as a consequence, her attorney did not have sufficient time to prepare to meet the statement. While it is true that formal written notice was not given until a week before trial and received by counsel a day later, the record indicates that use of Tender Years testimony had been discussed on prior occasions and that the Commonwealth had given oral notice of its intent during a pretrial conference two months before the first day of trial and three months before the second and last day of trial. In addition, the statements of persons who would be called to give the Tender Years testimony had been given to defense counsel months earlier. Based on these facts, Judge Hamill denied [Appellant's] motion to preclude the Tender Years statements based on lack of sufficient notice. Judge Hamill's decision was fully supported by the facts and the law which, as noted, does not require written notice.

---

[23] *See Commonwealth v. Luster*, 234 A.3d 836, 838 (Pa. Super. 2020).

Trial Ct. Op. at 12.

The record supports Judge Mark's ruling. The parties litigated Appellant's motion to exclude the Tender Years statements on the first day of trial. Attorney Jordan conceded she had received the statements in discovery before the Commonwealth's Tender Years notice issued one week before trial. *See* N.T., Trial Vol. I, at 12. She also acknowledged she "was aware that some of the witnesses planned to testify." *Id.* However, she insisted: "Those plans for them to testify never stated in accordance with Tender Years or anything of that nature." *Id.* Attorney Jordan also claimed that the attorney for the Commonwealth "specifically told me he was not filing Tender Years Notice" and then attempted to "sandbag the [d]efense." *Id.* at 8.

The Commonwealth responded that while it did not provide written notice until a week before trial, Attorney Jordan "was given oral notice of our intention to use the Tender Years statement on April 26th of 2017, . . . during a pre-trial conference[.]" N.T., Trial Vol. I, at 9-10. Furthermore, the Commonwealth maintained it provided Attorney Jordan with the statements "months ago and told [her] that these witnesses would be called to . . . testify in accordance with their statements." *Id.* at 11. In support of its argument, the Commonwealth presented the testimony of Assistant District Attorney Patrick Robinson (ADA Robinson). *See id.* at 15. ADA Robinson admitted he told Attorney Jordan the Commonwealth would not be using Tender Years testimony at the **preliminary hearing**. *Id.* at 16. However, he later provided Attorney Jordan with the names and statements of the witnesses at

issue, and noted their "only involvement" in the case was that they had "taken statements from the children." *Id.* at 17. Although he acknowledged he never used the words "Tender Years," ADA Robinson testified there was "conversation" at the April 2017 pretrial hearing regarding "matters that probably would need to be filed, but [he] was unsure of how to proceed because" the trial court was going to be the fact finder. *See id.* at 25-26. *But see* Commonwealth's Exhibit 2, Letter from ADA Robinson to Attorney Jordan, 5/12/17 (stating the Commonwealth will call Bisceglie and the victims as witnesses at trial, and "[d]epending on how the [t]rial develops, [it] may call" the CYS caseworker and N.S.'s father).

Although we recognize the Commonwealth's oral notice could have been more explicit, we conclude Judge Mark did not err in finding it satisfies the spirit of the Tender Years Rule. *See Luster*, 234 A.3d at 838. Unlike in *Crossley*, Attorney Jordan had the relevant statements in her possession months before trial, and N.S.'s Tender Years statements were these witnesses' only involvement in the case. *See Crossley*, 711 A.2d at 1026 (defendant received statements **only** four days before trial). Furthermore, there was discussion about the use of these statements as Tender Years evidence at the pretrial conference.[24] Thus, we conclude no relief is warranted.

_____

[24] We note that in *Luster*, this Court interpreted the Tender Years notice requirement strictly. In that case, a week before trial, the Commonwealth provided "oral notice of its intention to present" a videotape of the victim's forensic interview pursuant to the Tender Years Rule. *Luster*, 234 A.3d at
*(Footnote Continued Next Page)*

In her third claim, Appellant challenges the weight of the evidence supporting her convictions.[25]  Specifically, she maintains the trial court inadequately weighed the testimony describing her distinct markings on her abdominal area — which she claims the victims should have remembered — as well as the testimony of I.L., who contradicted N.S.'s testimony and "had no reason to be untruthful[.]"  Appellant's Brief at 29-30.

Our review of a weight claim is well-established:

"The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses."  Resolving contradictory testimony and questions of credibility are matters for the finder of fact.  It is well-settled that we cannot substitute our judgment for that of the trier of fact.

Moreover, "Appellate review of a weight claim is a review of the exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence."  "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence."  "One of the least

---

837.  The panel concluded that "one week's notice did not provide [the defendant] a 'fair opportunity to prepare to meet the statement.'"  *Id.* at 839.  The panel noted that as a result of the late disclosure, "it was necessary to redact irrelevant information from the video in the midst of trial with the jury already impaneled."  *Id.*  Here, the Commonwealth's attorneys indicated that there was discussion regarding its intent to introduce the Tender Years statements at a pretrial conference conducted two months before trial.  *See* N.T., Trial Vol. I, at 9-10, 25-26.  We conclude this satisfies the notice requirements of the Rule.

[25] Appellant properly preserved her weight claim in her timely filed post-sentence motion.  *See* Pa.R.Crim.P. 607(A)(3).

assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice."

Furthermore, "in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court."

***Commonwealth v. Miller***, 172 A.3d 632, 642–43 (Pa. Super. 2017) (citations omitted).

In her weight challenge, Appellant focuses on her medical records and testimony concerning the appearance of her abdominal area during the relevant period, and I.L.'s testimony, which directly contradicted N.S.'s claim that she was also sexually abused. ***See*** Appellant's Brief at 30. Our review is somewhat hampered because President Judge Hammill, who sat as fact finder during Appellant's non-jury trial, retired before this appeal was perfected and did not issue an opinion. Nevertheless, Judge Mark, recognizing his limited role, reviewed the transcript and found no "abuse of discretion, shock, or injustice" in the verdict. Trial Ct. Op. at 16. Upon our review, we agree. The Commonwealth's case rested almost exclusively on credibility determinations. While Appellant presented testimony which tended to poke holes in the victims' accounts, none of the evidence presented undermined the court's verdict to the degree that it would shock one's conscience. ***See Miller***, 172 A.3d at 643. The trial court, sitting as fact finder, was free to believe the testimony of A.S. and N.S. ***See Miller***, 172 A.3d at 642. Thus, Appellant's challenge to the weight of the evidence fails.

In her final issue, Appellant contends trial counsel, Attorney Jordan, rendered ineffective assistance in several respects. **See** Appellant's Brief at 32. She recognizes, however, that these ineffectiveness claims cannot be addressed until collateral review. **Id.** at 33. We agree.

In the seminal decision, **Commonwealth v. Grant**, 813 A.2d 726 (Pa. 2002), the Pennsylvania Supreme Court held that "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." **Id.** at 738. Eleven years later, in **Commonwealth v. Holmes**, 79 A.3d 562 (Pa. 2013), the Supreme Court reaffirmed its holding in **Grant**, but also delineated two narrow exceptions to the general rule. **Id.** at 576-78. A trial court may consider ineffectiveness claims on post-verdict review: (1) in "an extraordinary case where the trial court, in the exercise of its discretion, determines that a claim (or claims) of ineffectiveness is both meritorious and apparent from the record so that immediate consideration and relief is warranted[;]" or (2) when the defendant raises "multiple, and indeed comprehensive, ineffectiveness claims[,]" which the court, "in its discretion and for good cause shown," determines post-verdict review is warranted, and the defendant waives his right to PCRA review. **Id.** at 577, 578 (footnote omitted).

Appellant does not claim that either exception applies here. Accordingly, no relief is due.

Because we conclude none of Appellant's issues warrant relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/27/2021